Argued April 12, affirmed November 5, 1929.

H. E. SLATTERY, ADMINISTRATOR, *v.* ROBERT Z. DRAKE AND STANDARD SESONING SOCIETY.

(281 Pac. 846.)

694

For appellant, *Mr. H. E. Slattery*, Administrator, *in pro. per.*

For respondents there was a brief over the names of *Mr. Herbert W. Lombard* and *Messrs. Clark & Clark*, with an oral argument by *Mr. A. E. Clark.*

BELT, J.—The defendant Robert Z. Drake, under the assumed name of the Standard Sesoning Society, was engaged in the manufacture of bridge timbers. In connection with the operation of the plant there was a large platform upon which the newly sawed bridge timbers were piled. These timbers were about three inches thick, twelve inches wide and eighteen feet long. The piles of timber were between five and six feet high with passageways between for the convenience of those who worked in and about the plant. It is alleged that Ruby Schilker, a little girl about eight years of age who lived approximately ninety yards from the platform, had been for a period of nearly three months prior to the accident, accustomed daily to go upon the premises of the defendant for the purpose of playing upon and around these lumber piles, all of which was known to the defendant who made no objection. It is alleged that this little girl was greatly attracted and lured to these "bright, new bridge timbers," and that, on

April 29, 1928, while she was playing upon or climbing over one of the piles of timbers, some of them fell upon her, by reason of the negligence and carelessness of the defendant in piling the same, producing injuries from which she soon died.

■ Plaintiff relies upon the doctrine of attractive nuisances. There is no subject relative to the law of negligence concerning which there is such wide divergence of opinion among courts. Indeed, it is difficult to reconcile the decisions of this court as to whether the doctrine has been approved or rejected. Many courts have rejected it as unsound and an unwarranted interference with the beneficial use of property; others, although recognizing the doctrine, have greatly limited and restricted its application, while in a few jurisdictions the rule has been so extended as to apparently shift to the land owner the primary and natural duty of parents to protect their children from damage.

It may be said, however, with some degree of certainty, that the modern tendency of the courts has been toward a restriction of the attractive nuisance doctrine: *United Zinc & Chemical Co.* v. *Britt,* 258 U. S. 268 (66 L. Ed. 615, 42 Sup. Ct. Rep. 299, 36 A. L. R. 28); 20 R. C. L. 81, and numerous cases collated in exhaustive note in 36 A. L. R. 45. A decided change of attitude by the United States Supreme Court is observed in the Britt case. It is a far cry from the pioneer turntable case of *Sioux City & Pacific Ry. Co.* v. *Stout,* 17 Wall. 657 (21 L. Ed. 745), decided in 1873. In the Britt case two children were lured on a hot July day to bathe in a clear pool of water poisoned by sulphuric acid and zinc sulphate, which was maintained on an abandoned plant of the defendant company. It is difficult to conceive of anything more attractive or

alluring to a red-blooded American youth than a swimming pool, yet recovery was denied. The case might well be regarded—as it was by those justices dissenting—as one in which the doctrine was practically rejected. The fact that the pool was not visible from the highway or from any place where children had a right to be does not, in our opinion, establish a reason for the rejection or approval of the legal principles underlying the turntable cases. There were plain paths leading from the highway to and past the pool in question. It is suggested that the Britt case is distinguishable from the one at bar in that in the latter the defendant had knowledge that the little girl killed was using the piles of timber as a playground and made no objection thereto. Unquestionably such knowledge is a factor to be taken into consideration but is not controlling. Mere sufferance or toleration by a land owner as to trespassing children does not ripen into invitation. Certainly it cannot be contended that the defendant intended to invite children to use his plant as a playground. Such use did not inure to his benefit but was, in fact, a constant menace and detriment to the beneficial use of his property. We conclude that the Britt decision, viewed in its entirety, is against the contention of the appellant herein.

■ This court, in *Riggle* v. *Lens*, 71 Or. 125 (142 Pac. 346, Ann. Cas. 1916C, 1083, L. R. A. 1915A, 150), and in *Haynes* v. *Oregon-Washington R. & N. Co.*, 77 Or. 236 (150 Pac. 286), unquestionably rejected the attractive nuisance doctrine, but in later cases, particularly in *Fisher* v. *Burrell*, 116 Or. 317 (241 Pac. 40), and in *Carr* v. *Oregon-Washington R. & N. Co.*, 123 Or. 259 (261 Pac. 899, 60 A. L. R. 1434), the doctrine was discussed and a strong inference arises therefrom that it has the approval of this court un-

der such restrictions as will prevent an unreasonable and unjust interference with the beneficial use of property. It is difficult to make any statement of a hard-and-fast rule governing its application, but we think liability attaches to a land owner, even as against children who are technical trespassers, where there is maintained an agency or instrumentality dangerous *per se* and which, on account of its nature and location, is particularly attractive and alluring to children. The doctrine is an exception to the general rule that the trespasser or bare licensee takes the property as he finds it and the owner owes no duty to him except to avoid wilful or wanton injury. The mere fact that the child is a technical trespasser does not, of itself, preclude a recovery, if, under the circumstances and on account of the character of the dangerous instrumentality, a duty arises on the part of the land owner to protect from injury children of immature judgment.

■ If, in the instant case, the child had been an adult, there would be no doubt as to the nonliability of the defendant. Negligence is predicated upon a breach of duty. The pertinent inquiry, therefore, is: What duty, if any, did the defendant owe to this little girl who was a technical trespasser upon his property? The answer hinges upon whether the attractive nuisance doctrine applies to the facts as alleged in the complaint. We think it has no application. In the Carr case this court held, as a matter of law, that the defendant was entitled to a directed verdict. There a little boy eight years of age met his death by the falling of a pile of railroad ties located upon the right of way of the railroad company. Yet we are asked to hold that recovery may be had for the death of a child of similar age, which

occurred through the falling of a pile of bridge timbers. Where lies the difference in principle? As was said by Mr. Justice ROSSMAN, speaking for the court in the Carr case:

"If the law should regard such a common object as a pile of ties an attractive nuisance it would lead to vexatious and oppressive litigation and impose upon owners a burden of vigilance and care which would materially impair the value of property and seriously cripple owners in making beneficial use of the property."

The defendant in the instant case is certainly entitled to carry on a legitimate business enterprise. Would the law go to the absurdity of requiring him to build a high wall around this lumber platform in order to prevent children from being attracted or lured by these "bright, new bridge timbers"? If so, what would be the color and height of the wall—for who knows what may be attractive or alluring to the active mind of a child? In the case at bar it is alleged that the child played daily upon this dangerous pile of bridge timbers for a period of three months and that such place was in plain view of her home ninety feet distant. If such be true the parents must indeed have been derelict in their duty. Yet they now seek to profit by the fruits of their own negligence.

If the doctrine applies to a pile of bridge timbers then, with equal propriety it may be applied to a pile of wood located upon one's property preparatory to storing it for the winter's use. It may readily be seen that, if the court gives its approval to such an extension of the doctrine as urged by plaintiff, the owner of property would practically become an insurer of the safety and welfare of little children

who, through kindness, are permitted to enter upon his premises.

■ In the Carr case there was evidence that the defendant company had knowledge that children had often used the property in question as a sort of playground, so that case cannot be distinguished from the instant one by reason of the element of knowledge. It is urged that, in the Carr case, it was held that the boy was not lured to the pile of ties, but we answer: If the doctrine has no application to such a common object, it is immaterial whether he was lured or not. The attractive nuisance doctrine cannot be invoked merely because a witness testifies that he was lured or attracted to some dangerous instrumentality. Whether it applies is a preliminary question of law for the court to decide. The great weight of authority is that such doctrine has no application to a pile of lumber or ties. See cases in note 36 A. L. R. 213. *Carr* v. *Oregon-Washington R. & N. Co., supra,* so decides and is controlling here.

The judgment of the lower court dismissing the action is affirmed. AFFIRMED.

BEAN and BROWN, JJ., concur.

COSHOW, C. J., dissents.

COSHOW, C. J., Dissenting.—This action was instituted by plaintiff to collect damages for the death of his intestate, the above-named Ruby Schilker, caused by a pile of lumber belonging to defendant falling upon and mortally wounding her. The above-named Standard Sesoning Society is the trade name of defendant. A demurrer to plaintiff's amended complaint was sustained by the trial court and, plaintiff

refusing to further plead, his complaint was dismissed and judgment entered against him for costs. A second amended complaint, after setting out the formal capacity of plaintiff and defendant, alleged that defendant was engaged in business of constructing bridges and maintained a drying plant and planing-mill at Latham, Linn County, Oregon, for the purpose of seasoning and preparing timber for his business; that in connection with said drying plant was a large platform upon which he piled the green lumber from which it was taken to be prepared for use in defendant's business. Said lumber is described as being two to three inches thick by ten to twelve inches wide and sixteen to eighteen feet long. It was piled five and one-half to six feet high with passageways and open spaces between the piles. Plaintiff's decedent was a little more than seven and one-half years old at the time she was fatally injured. It is alleged sufficiently that the lumber was so piled, being fresh and green, as to be attractive to small children who played around and about the lumber without hindrance or let; and

"That for a period of three months prior to and including April 29, 1928, the said Ruby Schilker was attracted, enticed and allured daily from her said home and yard by the said piles of bright new bridge timbers, all of which was well known to the said defendant; that, as a result of the said attraction, enticement and allurement to her of the said piles of bright new bridge timbers the said Ruby Schilker left her said home daily and said yard daily for a period of three months and went to the said piles of bright new bridge timbers to climb upon and over the same and to play thereon and where she did climb over the same up one side and down the other pile after pile and play thereon, all of which was well known to the said defendant and all of which

was done with the knowledge of and without any objections made on the part of the said defendants, and that, at all times, all of the foregoing allegations of fact were well known to the said defendants; * * ."

Then plaintiff further alleged:

"That on April 29, 1928, the defendant negligently and carelessly injured and hurt the said Ruby Schilker, as hereinafter described, and, as a result of the said injury and hurt she died in Lane County, Oregon, on May 1, 1928; that on or about April 28, 1928, the said defendant negligently and carelessly erected a more dangerous pile of bright new bridge timbers upon the said platform as follows, to-wit: That the said pile was 5½ feet high and consisted of three tiers of bright new bridge timbers 3 inches thick by 10 inches wide by 16 feet long; that the said plank were piled irregularly and overlapping and the edges of some of the new timbers in the outside tiers were back as much as three inches from the edges of the others and the said timbers were so piled that one of the outside tiers at the top leaned out and away from the other adjacent tier a distance of 3 inches and was wobbly and shaky, and the center of gravity of said tier at the bottom was barely within the base, that it was so piled that the least weight thereon or disturbance thereof would cause the said tier to fall outward and down from the said pile; that there was an open space on the outside of the said tier toward which open space the said tier was leaning; that the said pile of bright new bridge timbers was dangerous to children playing upon or about the same which fact was well known to the said defendant; that on April 29, 1928, the said Ruby Schilker was attracted, enticed and allured from her said home and yard by the said piles of bright new bridge timbers to go to the said platform to play upon and climb over the same and as a result of the said attraction, enticement, and allurement she went from her said home and yard to the said piles of bright new bridge timbers to play upon

and climb over the same, as the defendant well knew she would and was accustomed to do, and that on the said date while on the said platform she started to climb over all of the said piles up one side and down the other pile after pile as had been her custom daily for a period of three months to the knowledge of the defendant; and that while on the said platform the said Ruby Schilker started to climb over the said pile of bright new bridge timbers containing the leaning tier above described on the side opposite from the said leaning tier and that when she reached the top of the said pile which was 5½ feet high she started to climb down the other side which contained the leaning tier and while she was so climbing down from the said pile the said leaning tier of bright new bridge timbers fell upon her on said April 29, 1928."

and she was crushed, receiving the injuries from which she died two days later. The demurrer to the second amended complaint was on the ground that said complaint did not state facts sufficient to constitute an action against defendant. The sole question presented here is whether or not, under the facts alleged in the second amended complaint, defendant is liable as a matter of law to plaintiff.

The doctrine of attractive nuisance or "turntable cases" has been adopted in this state: *Carr* v. *Oregon-Washington R. R. & Nav. Co.,* 123 Or. 259 (261 Pac. 899, 60 A. L. R. 1434); *Fisher* v. *Burrell,* 116 Or. 317, 330 (241 Pac. 40); *Riggle* v. *Lens,* 71 Or. 125, 131 (142 Pac. 346, Ann. Cas. 1916C, 1083, L. R. A. 1915A, 150); *Hill* v. *Tualatin Academy,* 61 Or. 190 (121 Pac. 901). In the following cases the injured party was not trespassing at the time of receiving the injury: *Cooper* v. *North Coast Power Co.,* 117 Or. 652 (244 Pac. 665, 245 Pac. 817); *Burroughs* v. *Pacific Tel. & Tel. Co.,* 109 Or. 404 (220 Pac. 152); *MacDonald* v. *O'Reilly,* 45 Or. 589, 600 (78 Pac. 753). In *Haynes* v. *Oregon-*

*Washington R. & N. Co.*, 77 Or. 236 (150 Pac. 286), no negligence was shown. Each case must be determined from its own peculiar facts. The difficulty lies in applying the principle to the facts. It is impossible to reconcile the different decisions from the different jurisdictions on the principles involved in this case. A very thorough discussion of the doctrine is recorded in *Hardy* v. *Missouri Pac. R. Co.*, 266 Fed. 860 (36 A. L. R. 1); *Branan* v. *Wimsatt*, 54 App. D. C. 374 (298 Fed. 833, 36 A. L. R. 14); *Fitzpatrick* v. *Donahue Realty Co.*, 151 Minn. 128 (186 N. W. 141, 36 A. L. R. 20); *Ramsay* v. *Tuthill Bldg. Material Co.*, 295 Ill. 395 (129 N. E. 127, 36 A. L. R. 23); *United Zinc & Chemical Co.* v. *Van Britt*, 258 U. S. 268 (66 L. Ed. 615, 42 Sup. Ct. Rep. 299, 36 A. L. R. 28). The note is an exhaustive one and begins on page 34. Beginning on page 213 is an extensive discussion of the doctrine applied to lumber piles. Other valuable notes are to be found in Ann. Cas. 1916C, following *Riggle* v. *Lens*, Ann. Cas. 1916C, 1083; Ann. Cas. 1912D, beginning on page 916; 19 L. R. A. (N. S.), beginning on page 1094; 45 A. L. R., beginning on page 979; Ann. Cas. 1915C, beginning on page 255. There are numerous other cases and valuable notes, practically all of which are mentioned in the notes cited. The subject matter is also ably and thoroughly discussed in the case of *Carr* v. *Oregon-Washington R. R. & Nav. Co.*, above. The case of *Haynes* v. *Oregon-Washington R. R. Co.*, above, is apparently contrary to the doctrine as announced in the turntable cases, but in reality is not in conflict therewith as that doctrine is announced in the latest pronouncements of the Supreme Court of the United States. In the Haynes case, which involved a cave in an embankment of a cut, the alleged attractive nuisance was not

visible from a highway, and the boy who was injured was not attracted to the railroad by it. The decision of the court was against the plaintiff because no negligence was or could be reasonably attributed to the defendant railroad company. The case of *Riggle* v. *Lens,* above, denied recovery for the death of the infant but did not repudiate the doctrine of the turntable cases. On the contrary, the opinion seems to have followed the great weight of authority in applying that doctrine. The opinion concludes in this language:

"The private duty to guard a child against unconcealed dangers devolves upon the parent, and not upon the landowner. The great majority of the cases upon this point hold that the landowner is liable only for accidents occurring on his land by reason of dangerous, unguarded machinery, permitted or created by him or some concealed, dangerous condition thereon that is attractive to children whereby they may be injured; otherwise he is not liable." *Riggle* v. *Lens,* 71 Or. 125, 131 (142 Pac. 346, Ann. Cas. 1916C, 1083, L. R. A. 1915A, 150).

In *Carr* v. *Oregon-Washington R. R. & Nav. Co.,* 123 Or. 259 (261 Pac. 899, 60 A. L. R. 1434), Mr. Justice ROSSMAN said on page 274 et seq.:

"In *Foster* v. *Lusk,* 129 Ark. 1 (194 S. W. 855, 17 N. C. C. A. 361), the complaint alleged that the pile was so constructed that it would readily topple over and that it was near a pile of sand which was very attractive to children; that all of this was well known to the defendant; that plaintiff, a child of four years, was injured while playing in the sand pile by the falling down of the ties; this was held to allege a cause of action. * * Numerous authorities hold that it is not sufficient to merely show that the defendant had upon his premises an attractive, dangerous object, but the plaintiff must prove that the object allured the child to a place of danger."

In the Carr case this court held that not only was plaintiff's intestate not attracted to the place by the pile of ties, but no negligence was proven in the manner in which the ties were piled. The evidence disclosed beyond dispute that the ties were piled in the ordinary and usual manner, and in some unaccountable way one of them was dislodged and fell upon the boy, causing death. So, in the instant case we would not hold that the mere fact that the child was injured while playing upon the piles of lumber would entitle plaintiff to recovery, but the complaint alleges that for a period of three months the child visited the platform on which the lumber was stored daily; that defendant knew that the child so visited the platform and so played upon the lumber; that defendant never imposed any objection nor gave any warning of any danger; that in knowledge of those conditions and facts defendant so carelessly piled lumber as to cause it to fall by the weight of the child and thereby fatally injure her. The fact that the child had been playing there so frequently, had been allured there by the lumber and defendant had made no objection nor gave warning is sufficient to justify the implication that defendant had given permission. Defendant thereupon owed to said child the duty of exercising ordinary care to prevent her injury. A jury might be justified in drawing an inference from the facts alleged that the child was a licensee. The allegation is direct and positive that the child was allured to the place by the lumber. We cannot be wiser than the complaint. The demurrer admits the truthfulness of the complaint. We concur in the expression of the late Mr. Justice EAKIN in *Riggle* v. *Lens,* above:

"The private duty to guard a child of unseen danger devolves upon the parent, and not upon the landowner."

However, this principle does not justify a person having knowledge of a child's custom to play in and around piles of lumber in so carelessly piling the lumber as to let it fall with the weight of a little child. We repeat that if the lumber had been piled with ordinary care and the child had been injured by some action not the result of the carelessness of the defendant, then plaintiff could not recover. Where there is no duty owed to a child there is no liability for a child's injury. But when the defendant permitted the child to come continuously to the platform to play he owed the child the duty of not being careless or negligent in piling the lumber. The child was not hurt by a plank or two falling from a pile. One tier of the three forming the pile was so far from being plumb that the tier fell as the child climbed over it. The court in headnote to *Hardy* v. *Missouri Pac. R. Co.*, 36 A. L. R. 1 (266 Fed. 860), correctly states the legal principle thus:

"One negligently maintaining an agency which he knows, or should know, to be dangerous to children, at a place where he knows, or should know, children are likely to resort, or to which they are likely to be attracted, is liable for injury caused by it to a child so attracted to it."

I regret that I am unable to concur in the majority opinion in this case. I believe too much stress is placed upon the instrumentality causing an injury. The true principle of law on which I rely is the maxim "so use thine own as not to harm others." We must accept the allegations of the complaint as true. We have no right to go beyond the complaint or to rely

on facts inconsistent with the allegations therein. Gathered from the many cases and statements of the law in text-books, I believe there is a principle which should guide the courts in considering and deciding the kind of a case under consideration.

The weight of authority requires both allurement by the dangerous agency, and negligence on the part of the operator or owner thereof. In the case of *United Zinc & Chemical Co.* v. *Van Britt*, above, relied on by defendant, the majority opinion is based on the fact that the pool of poisonous water was not visible from the highway and could not have attracted the boys into the inclosure. In *Riggle* v. *Lens*, above, no negligence could be charged against defendant. In *Carr* v. *Oregon-Washington R. & N. Co.*, above, neither allurement nor negligence was shown. In the instant case both elements which combine to create liability are alleged. We have no right to assume that courts will not properly administer the law if and when this court announces a rule or principle whereby the trial courts can apply the rule. To determine cases, however, from the instrumentality as the crucial test is to make "confusion worse confounded." Legitimate industry will not be hampered in any degree, by requiring its conductors to use ordinary care in conducting its affairs.

The "attractive nuisance" doctrine is an inapt term. A turntable is not a nuisance unless negligently left in a condition to do harm to immature children. A pile of lumber is attractive to children who love to climb. One piling lumber in a place of easy access to children should exercise ordinary care to prevent injury to children permitted to play on the lumber. No one is contending that unreasonable requirements should be demanded. The negligence of

parents will not excuse wanton negligence of others. Every person must answer for his own negligence. The court should not determine as a matter of law that defendant is not liable, but the case should be submitted to the jury on the facts under proper instructions.

The judgment should be reversed and the case remanded.